UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARTIN J. MASON,

           Plaintiff,

   v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

           Defendant.

CASE NO. 13-cv-05724 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 18, 21, 22).

After considering and reviewing the record, the Court finds that the ALJ erred when he failed to ask the vocational expert ("VE") about inconsistencies regarding other jobs that plaintiff could perform in the national economy.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

### BACKGROUND

Plaintiff, MARTIN MASON, was born in 1964 and was 46 years old on the amended alleged date of disability onset of April 17, 2010 (*see* Tr. 47, 214). Plaintiff has a GED plus some college (Tr. 63).  Plaintiff served in the Army until he was discharged on his amended alleged date of disability (Tr. 68).

Plaintiff has at least the severe impairments of "posttraumatic stress syndrome (PTSD); alcohol abuse; degenerative disc disease; and bilateral metatarsalgia (20 CFR 404.1520(c))" (Tr. 23).

At the time of the hearing, plaintiff was living in a rental home with his wife of seven years (Tr. 65).

### PROCEDURAL HISTORY

After plaintiff first filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) on March 11, 2011, which was denied, plaintiff filed another application for disability insurance on October 14, 2011(*see* Tr. 212-215), which was denied initially and following reconsideration (Tr. 120-130, 133-43). Plaintiff's requested hearing was held before Administrative Law Judge Scott Morris ("the ALJ") on September 19, 2012 (*see* Tr. 41-107). On January 15, 2013, the ALJ

issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.18-40).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ provided legitimate reasons for rejecting the testimony of Keith Meyer, M.S., LMHC, the treating therapist; (2) Whether or not the ALJ provided adequate reasons for rejecting the Rating Decision issued by the Veterans Administration; (3) Whether or not the ALJ provided clear and convincing reasons for finding that plaintiff's testimony was not credible; (4) Whether or not the jobs identified by the VE were consistent with their description in the Dictionary of Occupational Titles ("DOT"), and if not, whether the inconsistencies were resolved as required by SSR 00-4p; and (5) Whether or not the case should be remanded to the same ALJ (*see* ECF No. 18, p. 2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether or not the ALJ provided legitimate reasons for rejecting the testimony of Keith Meyers, M.S., LMHC, the treating therapist.**

Here, plaintiff complains about the ALJ's rejection of the lay opinion of Mr. Meyers on the basis that he had been treating plaintiff only for seven months and that his opinion was not supported by the longitudinal record (*see* Tr. 32).

Mr. Meyers testified at plaintiff's administrative hearing and had been plaintiff's treating therapist for seven months (*see* Tr. 93-106). Mr. Meyers provided numerous opinions, such as that plaintiff is unable to work full-time (*see* Tr. 94-95). The Court notes his testimony that the issue "has nothing to do with his intelligence or motivation or skill," but that plaintiff's ability "to focus for any period of time is going to be a significant thing" (*see* Tr. 96). The Court also notes Mr. Meyers' testimony that as a therapist, he takes at "full face value" what is reported to him (*see* Tr. 101).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, therapists and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Treatment duration is a relevant factor; therefore, the ALJ did not err by noting it. Furthermore, the ALJ's finding that the opinion of Mr. Meyers is not supported by the longitudinal record is a finding supported by substantial evidence in the record as a

whole. The ALJ included a thorough discussion of the evidence regarding plaintiff's mental and physical impairments in the ALJ's written decision (*see* Tr. 27-30). The ALJ also included a concise summary of the discussion regarding mental impairments as follows:

> Thus, the objective evidence of record shows that for the most part the claimant's symptoms are exasperated by his failure to take his prescribed medications. When the claimant is compliant with his medication, his symptoms are not as severe as he alleges. For example, the record shows that after having been on medication for only two months by December 2010, the claimant reported that his prescriptions were working like magic. The claimant then stopped taking his medication in February 2011. By June 3, 2011 the claimant reported that he had been hypervigilant since he stopped taking his medication. His provider prescribed Paxil and Trazodone and by June 23, 2011, the claimant reported he was doing well on the medications (internal citation to Ex. 7F/70-73). The claimant was medication noncompliant again in late July 2011, but after he resumed his medication by August 4, 2011, his mental status became noticeably improved (internal citation to Ex. 7F/52). In September 2011, October 2011, and November 2011, he was cooperative and appropriate, had good eye contact, had well organized and goal directed thoughts, and had no evidence of paranoid thinking (internal citation to Ex. 7F/21, 24, 35, 38, Ex. 13F/7). In February of 2012, March of 2012 and April of 2012, the claimant was cooperative and appropriate; there was no evidence or report of acute distress; and his thought process appeared focused (internal citation to Ex. 14F/12, 13, 15). He had an exasperation of symptoms in May of 2012, but by June of 2012, after having been prescribed a new medication he was much improved. He was cooperative and appropriate. His thought process appeared focused and his mood appeared stable (internal citation to Ex. 14F/4).

(Tr. 29).

Furthermore, the ALJ supported his assessment of Mr. Meyers' opinion also by noting that shortly after Mr. Meyers began counseling plaintiff, plaintiff "experienced his most severe symptoms" (Tr. 32). The ALJ noted that prior to May, 2012, "the record

demonstrates that the claimant's symptoms were alleviated significantly when he complied with taking his medication," and also noted that even "after May of 2012, when the claimant had an exacerbation of symptoms, they improved after he was prescribed and started taking Risperidone" (*id.*).

Although plaintiff provides an alternative interpretation of the evidence, the ALJ's interpretation and characterization of plaintiff's mental health is supported by substantial evidence in the record as a whole, including the finding that when plaintiff is compliant with his medication regimen, his symptoms are less severe than alleged. The ALJ's finding that Mr. Meyers' opinion was not supported by the longitudinal record is a finding based on substantial evidence in the record as a whole (*see* Tr. 32). The Court concludes that the ALJ provided a germane reason for failing to credit fully this opinion.

(2) **Whether or not the ALJ provided adequate reasons for rejecting the Rating Decision issued by the Veterans Administration.**

Plaintiff contends that the ALJ rejected the VA's finding of disability by isolating plaintiff's various physical impairments and finding them each to be only mild. The record includes a VA disability rating of 80%, as noted by the ALJ (*see* Tr. 31 (*citing* Ex. 2F/11)).

Regarding the weight to be given to a disability determination by the Department of Veterans Affairs ("VA"), the Ninth Circuit has held "that in an SSD case an ALJ must ordinarily give great weight to a VA determination of disability . . . because of the marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (internal citations omitted) (noting

various similarities between the programs). The Court further concluded that "the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citation omitted).

Here, the ALJ provided persuasive, specific and valid reasons for failing to credit fully the VA disability rating. *See id.* The ALJ included the following discussion in the written decision:

> The claimant was granted a total service-connected disability of 80% for his combined mental and physical impairments effective April 17, 2010 (internal citation to 2F/11). While a VA assessment is given a significant level of deference, the Social Security Administration is not bound by disability determinations made by other agencies because of different rules governing the definition and assessment of disability (internal citation to 20 C.F.R. § 404.1504). Although I give some weight to the VA determination, I find that the medical evidence of record demonstrates of the claimant's mental and physical limitations are not as severe as an 80% rating would suggest. Records show that when the claimant complies with his psychiatric medication he functions quite well. As to his physical condition, the radiographs of the spine and knee demonstrate only mild degeneration (internal citation to Ex. 14F/16-20). On exam with Dr. Gaffield, the claimant ambulated without difficulty from the waiting room to the examination room. He could walk on his heels and on his toes. His gait was normal. He arose from the exam chair to the standing (sic), got on and off the exam table, and arose from supine to sitting without apparent discomfort. On examination of his extremities, the claimant had good strength and full range of motion. His grip and dexterity were intact. There was slight weakness of the ankles compared to the knees and hips. His reflexes were normal. His neurological exam was normal. His hips had full range of motion and good strength (internal citation to Ex. 5F/1-5). Further, the claimant's activities of daily living also demonstrate greater functional abilities both mentally and physically.

(Tr. 31).

Based on a view of the relevant record, the Court concludes that the ALJ's finding that "the medical evidence of record demonstrates of the claimant's mental and physical

limitations are not as severe as [the VA's] 80% rating would suggest" is a finding based on substantial evidence in the record as a whole and constitutes a persuasive, specific, and valid reason for failing to credit fully the VA's disability determination (*see id.*). The Court concludes that the ALJ did not err by failing to credit fully the disability determination of the VA.

    (3)    **Whether or not the ALJ provided clear and convincing reasons for finding that plaintiff's testimony was not credible.**

Plaintiff contends that the ALJ did not find plaintiff credible with respect to his mental impairments because of a finding that he is not psychotic and was "pleasant cooperative and polite," although plaintiff alleges an anxiety disorder not a psychotic disorder. Plaintiff also complains about the ALJ's reliance on his activities of daily living when failing to credit fully his testimony, arguing that plaintiff "never said that he could not shop in stores, attend college, drive, prepare meals, take care of personal hygiene and his pets, read or watch TV" (*see* Opening Brief, ECF No. 18, p. 10).

Although the Court agrees with plaintiff's contention regarding his activities of daily living, based on a review of the relevant record, the Court concludes that the ALJ provided legally sufficient reasons for failing to credit fully plaintiff's allegations.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional

impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22. Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).

Here, the ALJ relied on plaintiff's activities of daily living that were not inconsistent with his other testimony and were not transferable to a work setting, committing legal error. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

However, the Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted); *see also Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111). Here, the ALJ provided other valid reasons supported by the record for the failure to credit fully plaintiff's allegations and credibility.

In part, the ALJ found that plaintiff's allegations were inconsistent with the objective medical evidence. Regarding mental impairments, the ALJ found that "the medical evidence of record demonstrates that when the claimant is compliant with his prescribed medication, he is fully capable of work that involves simple routine tasks with occasional public and coworker contact" (*see* Tr. 27). The ALJ included a thorough discussion in the written decision supporting this finding (*see* Tr. 27-29). Regarding plaintiff's physical impairments, the ALJ found that "the objective medical evidence is not consistent with the claimant's allegations as to the limiting affect of his symptoms" (*see* Tr. 29). The ALJ again supported this finding with a thorough discussion of the medical record, including examination results from Dr. Gary Gaffield, D.O., who "observed that the claimant ambulated without difficulty from the waiting room to the examination room" (*see* Tr. 29-30). As noted by the ALJ, Dr. Gaffield also noted that plaintiff could walk on his heels and on his toes, his gait was normal, and that he arose from the exam chair to the standing position (*see* Tr. 30).

Based on the relevant record, the Court concludes that the ALJ's finding that plaintiff's allegations as to the limiting effects of his symptoms are inconsistent with the objective medical evidence is a finding based on substantial evidence in the record as a whole. Although a claimant's allegations as to the severity of symptoms cannot be disregarded solely on the basis of lack of support from objective medical evidence, here the ALJ also relied on inconsistent statements by plaintiff when failing to credit fully plaintiff's testimony (*see* Tr. 31).

The ALJ provided multiple examples of inconsistent statements by plaintiff when failing to credit fully plaintiff's credibility (*see id.*). The ALJ found that although plaintiff "testified that it takes him hours to start functioning in the morning due to taking trazodone at night and that tramadol makes them feel groggy, [] the evidence of record does not show that he has reported such severe side effects to his providers" (*see id.; see also* Tr. 73). As noted by the ALJ, "in a function report dated March 22, 2011, the claimant reported that his medications do not cause side effects (internal citation to Ex. 5E/8, *i.e.*, Tr. 264), [and] in June 2011, when he met with his medication provider, he denied side effects from the medications (internal citation to Ex. 7F/70-73, *i.e.*, Tr. 664-67)" (Tr. 31).

The ALJ's findings are supported by substantial evidence in the record (*see* Tr. 73, 264, 665 ("He feels that over all the medications have had a positive effect on his emotional health. He denies any side effects from the medications")). Although plaintiff multiple times indicated that he did not suffer from side effects from his medications, he testified at his administrative hearing that he suffered from a "variety of side effects[,] For example, Trazadone – I take between 1 and 200 mg of Trazadone a night . . . . otherwise I'm pulling perimeter guards throughout the night or getting up three or four times a night . . . . And it takes me hours just to be able to recoup and wake up from the Trazodone and get me functioning" (*see* Tr. 73). Therefore, the ALJs reliance on plaintiff's inconsistent statements when failing to credit fully plaintiff's credibility and allegations is proper. The court notes that the ALJ also relied on plaintiff's inconsistent statements about his drug use (*see* Tr. 31).

Based on the relevant record and for the reasons stated, the Court concludes that the ALJ did not commit harmful error when evaluating plaintiff's allegations and credibility.

(4) **Whether or not the jobs identified by the VE were consistent with their description in the Dictionary of Occupational Titles, and if not, whether the inconsistencies were resolved as required by SSR 00-4p.**

If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national economy, given his age, education, residual functional capacity ("RFC") and past work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

Here, at step five, the ALJ erred by not inquiring as to whether or not there exists a conflict between the VE's testimony and the DOT. This is against the Ninth Circuit's explicit holding that an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether or not the testimony conflicts with the Dictionary of Occupational Titles [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (*citing* Social Security Ruling, SSR 00-4p, available at 2000 SSR LEXIS 8). The court noted that "SSR 00–4p . . . provides that the adjudicator "*will* ask" the vocational expert 'if the evidence he or she has provided' is consistent with the *Dictionary of Occupational Titles* and obtain a reasonable explanation for any apparent conflict." *Id.* at 1152-53. The court reasoned that:

> The procedural requirements of SSR 00–4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the *Dictionary of*

> *Occupational Titles.* In making disability determinations, the Social Security Administration relies primarily on the *Dictionary of Occupational Titles* for "information about the requirements of work in the national economy." The Social Security Administration also uses testimony from vocational experts to obtain occupational evidence. Although evidence provided by a vocational expert "generally should be consistent" with the *Dictionary of Occupational Titles,* "[n]either the [*Dictionary of Occupational Titles*] nor the [vocational expert] ... evidence automatically 'trumps' when there is a conflict." Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*

*Id.* at 1153 (footnotes omitted).

The court noted that in "so holding, we join the Third, Seventh, and Tenth Circuits [and] We also follow our own precedent." *Id.* at 1152 (citations omitted).

Arguably, the ALJ's failure to inquire regarding an inconsistency between the VE's testimony and the DOT is harmless error if there is no inconsistency between the two. However, the Court cannot conclude with confidence that no inconsistency exists.

Here, the ALJ concluded that plaintiff's RFC requires a limitation to work involving only simple, routine tasks (*see* Tr. 25). However, as conceded by defendant, all of the jobs that the ALJ identified at step five as jobs that plaintiff could perform require the ability to perform at a reasoning level of two (*see* Response, ECF No. 21, p. 13). Defendant also concedes that the "DOT defines jobs requiring reasoning level of two as requiring the ability to '[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions'" (*see id.*).

Although defendant contends that the description of reasoning level two jobs as requiring common sense to carry out detailed but uninvolved instructions logically is

consistent with an ability to perform simple, routine tasks, the Court is not convinced that one who is limited to simple, routine tasks nevertheless can perform tasks requiring the ability to carry out detailed but uninvolved written or oral instructions. Therefore, although defendant cites unpublished decisions in an attempt to persuade the Court that there is no inconsistency between the ALJ's finding regarding plaintiff's RFC and the ALJ's reliance on the VE's testimony as to the job requirements, the Court cannot conclude that the ALJ's error is harmless. *See Massachi*, *supra*, 486 F.3d at 1152.

Rather, the Court concludes that this matter must be reversed and remanded so that the ALJ can comply with Social Security Ruling, SSR 00-4p, and with published Ninth Circuit precedent. *See id.* (*citing* Social Security Ruling, SSR 00-4p, available at 2000 SSR LEXIS 8)).

(5) **Whether this matter should be reversed and remanded for further administrative proceedings or for a direct award of benefits**.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. It is unclear whether or not plaintiff can perform the jobs identified at step five by the ALJ as jobs that he can perform, given the ALJ's finding regarding plaintiff's RFC. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

(6) **Whether or not the case should be remanded to the same ALJ.**

Plaintiff concedes that this "issue is now moot" (*see* Reply, ECF No. 22, p. 12).

CONCLUSION

The ALJ erred by relying on the VE's testimony at step five regarding job requirements without first inquiring of the VE whether or not the VE's testimony was consistent with the DOT. Hence, step five must be completed anew.

Based on this reason and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

1     **JUDGMENT** should be for plaintiff and the case should be closed.

2     Dated this 10th day of June, 2014.

 

                                                       J. Richard Creatura
                                                       United States Magistrate Judge